**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ATTAIN, LLC,<br><br>      Plaintiff,<br>v.<br><br>WORKDAY, INC., WORKDAY LIMITED, and ROBERT STEELE,<br><br>      Defendants. | CIVIL NO. _____<br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Attain, LLC ("Plaintiff" or "Attain") alleges the following against Defendants Workday, Inc., Workday Limited, and Robert Steele (collectively "Defendants"):

## INTRODUCTION

Attain brings this action because Defendants have been engaged in a campaign of interference, disparagement and defamation against Attain. For example, Defendants have made false and disparaging statements about Attain to a variety of businesses, and have threatened to cease doing business with companies doing business with Attain. Defendants' conduct has been designed to and has had the effect of causing damage to Attain's current and prospective business relationships with customers, potential customers, and third-party service providers.

## JURISDICTION AND VENUE

1.  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a).

2.  Defendants are subject to the personal jurisdiction of this Court because, among other things, Defendants have committed intentional tortious conduct in the forum state.

3. Venue is proper under 28 U.S.C. §§ 1391(b) because a substantial part of the events giving rise to the claims occurred in this District.

**PARTIES**

4. Plaintiff Attain, LLC is a limited liability company with its principal place of business located at 1600 Tysons Blvd., Suite 1400, McLean, VA 22102. Its members are citizens of Maryland, Virginia, New York, New Jersey, and North Carolina.

5. Defendant Workday, Inc., is a Delaware corporation and has its principal place of business located at 6230 Stoneridge Mall Road, Pleasanton, California 94588.

6. Defendant Workday Limited is a private limited company organized and existing under the laws of Ireland. Its registered office is located at 3rd Floor, Fumbally Square, Fumbally Lane, Dublin 8, Ireland.

7. Defendant Robert Steele is an individual domiciled in Allentown, Pennsylvania.

**RELEVANT FACTS**

The Alliance Agreement

8. Attain provides diverse and innovative consulting services primarily to two types of clients: (1) governmental agencies; and (2) "privates," *i.e.,* higher education institutions and academic hospitals. Among other things, Attain assists its clients with strategic data projects, data infrastructure management, adoption of new technologies, software as a service ("SaaS"), and serves as a general, or "Prime," contractor for work related to these services. Attain's services combine proprietary methodologies with experienced professionals to deliver market-leading results for its customers. Attain was established in 2009 and has continuously grown its operations through various strategic purchases and acquisitions.

9. Workday, Inc. and Workday Limited (together, "Workday") is a provider of

cloud-based software products that assists with financial and human resources management. Workday has a network of services, software, and payroll partners ("Partners") who must apply to and enter into alliance agreements with Workday in order to support Workday's products.

10. These Partners are designated as Certified Partners or Advisory Partners. Certified Partners work directly on the implementation of Workday products, whereas Advisory Partners are mainly responsible for sourcing new customers for Workday products and managing projects which may involve Workday products as one of many products in a given overall project.

11. Attain sought to be a Partner, and was in fact selected as an Advisory Partner by Workday. On May 14, 2015, Attain, Workday, Inc., and Workday Limited entered into an alliance agreement (the "Alliance Agreement"), under which Attain would be an Advisory Partner to Workday, providing consulting services to customers of Workday's products.

12. The Alliance Agreement contained a provision whereby either Workday or Attain could terminate, without cause, the Alliance Agreement at any time upon ninety (90) days prior written notice to the other Party.

13. Pursuant to the Alliance Agreement, Attain did in fact, in its role as a Workday Advisory Partner, source customers, and provide consulting and project management services to a number of educational institutions and teaching and research hospitals that used, among other products, Workday products. Upon information and belief, the customers Attain was responsible for bringing to Workday generated more revenue for Workday than the customers brought in by any other Advisory Partner.

14. In addition, Workday asked Attain to step in and replace some of Workday's other Partners mid-project on ventures in which education clients were unsatisfied with those Partners' services. Attain provided these services at a discount.

15. Independent of its work as a Workday Advisory Partner (in which it provided consulting services for institutions of higher education and academic hospitals using Workday products), Attain also served, and continues to serve, as the Prime contractor that leads in the implementation of SaaS or other strategic data projects for a number of these types of institutions. Additionally, independent of its relationship with Workday, Attain served, and continues to serve, for a number of these institutional customers as a Prime contractor for work related to SaaS or other strategic data projects.

Termination of the Alliance Agreement

16. Workday is known for imposing exacting, at times onerous requirements on its Partners. And despite Attain's success as an Advisory Partner, Workday continued to attempt to micromanage Attain's business.

17. This caused tension in the relationship between Workday and Attain, but Attain continued to serve, with great success, as an Advisory Partner.

18. In November of 2016, a year and a half into its Advisory Partner relationship with Workday, Attain was asked by Forrester Research ("Forrester"), a market analysis firm, to participate in a report it was preparing about Workday Partners. Attain provided the requested information to Forrester for inclusion into the report.

19. On March 1, 2017, Attain was notified by Forrester, not Workday, that Attain was no longer a Workday Partner, and that Workday had required Forrester to remove Attain from the report.

20. Attain had no prior notice of termination of the Alliance Agreement from Workday.

21. Subsequently, on or about March 3, 2017, Attain received an email from Workday notifying Attain that the Alliance Agreement would terminate effective May 30, 2017.

22. Based on information and belief, Workday terminated the Alliance Agreement because Attain was an independent company in the industry and would not agree to Workday's unreasonable demands and rates for certain projects. Notwithstanding, Plaintiff seeks relief only for Defendants' tortious conduct as set forth below.

### Defendants' Tortious Conduct

23. Since termination of the "Alliance Agreement," Plaintiffs have sought to punish Attain for its independence by making false and misleading statements about Attain to Attain's actual and prospective customers, and to third-party vendors, in an effort to exclude Attain, previously its Partner, from successfully competing in the SaaS and data infrastructure markets.

24. For example, Defendants, through Defendant Steele, have made disparaging comments about Attain to, *inter alia*, Muhlenberg College, Worcester Polytechnic Institute, Brandeis University, and Babson College.

25. Specifically, Defendants, through Defendant Steele, falsely told Muhlenberg College that Attain cannot be a Prime contractor on a deal with a Workday component and that Attain was not capable of handling the project (when in fact it could serve as the Prime contractor and was capable of handling the project). Attain had independently worked with Muhlenberg College to develop SaaS and data infrastructure plans and negotiate a corresponding contract, but Defendants' false statements to Muhlenberg College have seriously damaged Attain's relationship with Muhlenberg College.

26. When confronted by Eric Moseman, an Attain employee, about these misrepresentations, Defendant Steele admitted that he had called Muhlenberg to complain (falsely) about Attain's projects going poorly. After being told by Mr. Moseman to stop defaming Attain, Defendant Steele began screaming that Attain was a "joke" of a company, that he would "crush" Mr. Moseman, and that he would "kick [Mr. Moseman's] ass."

27. As another example, Attain had been working for nearly eight months with Worcester Polytech Institute ("WPI") to negotiate a contract for a SaaS and data infrastructure project, new technology adoption, and enterprise resource planning ("ERP"), when Defendants threatened not to do business with WPI if WPI continued doing business with Attain. As a result of Defendants' threats, WPI did not retain Attain, which resulted in significant monetary injury to Attain.

28. Also, Brandeis University asked Attain to help negotiate a statement of work agreement related to a strategic SaaS-based ERP project. When Attain became involved in the negotiation, it sought to negotiate mutually agreeable rates with Workday for the strategic data project. In response, Defendants, through Defendant Steele and Meredith Murray, another Workday employee, made false and disparaging statements about Attain and its business.

29. Plaintiffs' disparaging statements and improper threats pose dangers to Attain's continued relationship with Brandeis University, and in fact are ongoing. As recently as July 31, 2017, Defendant Steele told Brandeis University that it should stop seeking advice from Attain because Attain "has no idea what it is talking about."

30. On information and belief, Defendants advised Vicki Tambolini, a market analyst and intermediary between educational institutions and SaaS providers in this industry, that it would not work with Attain, and Defendants also disparaged Attain and its capabilities as a

6

business to her.  Plaintiffs' disparaging statements about Attain to Ms. Tambolini have damaged Attain and its business reputation because Ms. Tambolini is an important market analyst and intermediary within the industry who communicates and has relationships with Attain's actual and potential customers.

31. On information and belief, Defendants have falsely made other disparaging statements to Attain's actual and potential customers and third parties, including false statements that Attain had failed in SaaS implementation, that Attain was not a good firm, and that Attain's officers were not competent.  On information and belief, Plaintiff has missed out on other contracts and business opportunities with actual and potential customers as a result of Defendants' false and disparaging statements and wrongful threats to Attain's actual and potential customers and third parties.

32. Defendants, through Defendant Steele, have threatened third-party vendors, including Oakland Consulting Group, Inc., that Workday will not do business with them if they continue to work with Attain.

## COUNT I
## TORTIOUS INTERFERENCE WITH CONTRACT RIGHTS

33. Plaintiff hereby incorporates by reference and realleges each and every allegation of the Paragraphs above.

34. Defendants' conduct constitutes tortious interference with existing and prospective contractual relationships under Pennsylvania law.

35. Plaintiff has actual and valid contracts with its customers as well as prospective contractual relationships with a number of potential customers.

36. Defendants knew of Plaintiff's contractual and prospective contractual relationships with its customers.

7

37. Defendants intentionally interfered with the above mentioned existing and prospective contractual relationships by making threats against Plaintiff's existing and potential customers to withhold business from them if they continue to do business with Plaintiff.

38. Defendants had no privilege or justification for intentionally interfering with Plaintiff's existing and prospective contractual relationships.

39. Defendants' conduct was done with a bad motive and/or a reckless indifference to the interests of Plaintiff and others.

40. Defendants' conduct has caused and, unless restrained by the Court, will continue to cause irreparable injury to Plaintiff.

41. Plaintiff has suffered injury as a result of Defendant's conduct.

42. Defendants' conduct has damaged Plaintiff in an amount to be determined at trial.

43. Plaintiff has no adequate remedy at law and is further entitled to a preliminary and permanent injunction against Defendants' unlawful conduct.

## COUNT II
## COMMERCIAL DISPARAGEMENT

44. Plaintiff hereby incorporates by reference and realleges each and every allegation of the Paragraphs above.

45. Defendants' conduct constitutes commercial disparagement under Pennsylvania law.

46. Specifically, Defendants made disparaging statements concerning Plaintiff's business to Plaintiff's customers, potential customers, and third-party vendors with the intent to damage Plaintiff and its business reputation.

47. These statements were false.

48. Defendants made these statements intending to cause harm to Plaintiff and its

8

business reputation.

49. Defendants' conduct has caused and, unless restrained by the Court, will continue to cause irreparable injury to Plaintiff.

50. Defendants' conduct was done with a bad motive and/or a reckless indifference to the interests of Plaintiff and others.

51. Plaintiff has suffered injury as a result of Defendants' conduct.

52. Defendants' knew, or should have known, that their disparaging statements were false.

53. Defendants' conduct has damaged Plaintiff in an amount to be determined at trial.

54. Plaintiff has no adequate remedy at law and is further entitled to a preliminary and permanent injunction against Defendants' unlawful conduct.

## COUNT III
## DEFAMATION

55. Plaintiff hereby incorporates by reference and realleges each and every allegation of the Paragraphs above.

56. Defendants' conduct constitutes defamation against Plaintiff under Pennsylvania Law.

57. Specifically, Defendants have made multiple disparaging, derogatory, and/or false statements to Plaintiff's actual and potential customers regarding Plaintiff and its business reputation.

58. Defendants' conduct was done with a bad motive and/or a reckless indifference to the interests of Plaintiff and others.

59. Plaintiff's actual and potential customers understood the defamatory nature of the statements.

60. Plaintiff's actual and potential customers understood Defendants acted with the intent to injure Plaintiff and its business reputation.

61. Plaintiff has suffered injury as a result of Defendants' conduct.

62. Defendants' conduct has damaged Plaintiff in an amount to be determined at trial

63. Plaintiff has no adequate remedy at law and is further entitled to a preliminary and permanent injunction against Defendants' unlawful conduct.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that the Court enter the following relief:

A. Adjudge that Defendants have tortuously interfered with Plaintiff's existing and prospective contractual rights;

B. Adjudge that Defendants made commercially disparaging statements that injured Plaintiff;

C. Adjudge that Defendants have published statements that defamed Plaintiff;

D. Award Plaintiff injunctive relief;

E. Award Plaintiff its actual damages;

F. Award Plaintiff its lost profit;

G. Award Plaintiff punitive damages;

H. Award Plaintiff pre-judgment and post-judgment interest;

I. Award Plaintiff's attorneys' fees, taxable costs and disbursements incurred in this action;

J. Order all other relief as the Court deems just and proper.

//

//

|  |  |
|---|---|
| Dated: August 2, 2017 | VENABLE LLP<br>By: _____<br>Victoria R. Danta (SBN 320252)<br>1270 6th Ave #25<br>New York, New York 10020<br>Tel. 212-307-5500<br>Fax: 212-307-5598<br>vrdanta@Venable.com<br><br>Thomas E. Wallerstein (*pro hac vice* pending)<br>505 Montgomery Street, Suite 1400<br>San Francisco, CA 94111<br>Tel: 415-653-3750<br>Fax: 415-653-3755<br>twallerstein@Venable.com<br><br>*Attorneys for Attain, LLC* |

## JURY DEMAND

Plaintiff respectfully demands a trial by jury of all matters to which it is entitled to a trial by jury pursuant to Fed. R. Civ. P. 38.

|  |  |
|---|---|
| Dated: August 2, 2017 | VENABLE LLP<br>By: _____<br>Victoria R. Danta (SBN 320252)<br>1270 6th Ave #25<br>New York, New York 10020<br>Tel. 212-307-5500<br>Fax: 212-307-5598<br>vrdanta@Venable.com<br><br>Thomas E. Wallerstein (*pro hac vice* pending)<br>505 Montgomery Street, Suite 1400<br>San Francisco, CA 94111<br>Tel: 415-653-3750<br>Fax: 415-653-3755<br>twallerstein@Venable.com<br><br>*Attorneys for Attain, LLC* |